UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM VINCENT ROMERO,<br><br>                              Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation,<br><br>                              Respondent. | Case No.:  3:14-CV-1284-GPC-BLM<br><br>**ORDER:**<br><br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND**<br><br>**(2) DENYING A CERTIFICATE OF APPEALABILITY** |

## I.    <u>INTRODUCTION</u>

On Easter Sunday in 2010, Christina Gold hosted a party at her house where her ex-husband, Petitioner William Romero, reportedly showed up drunk.  Romero allegedly drank tequila and beer at the party until he vomited on the floor.  He then was overheard telling multiple family members that afternoon that if he drove his car, someone was going to die.  Romero's prophesy was properly relied upon as evidence of implied malice to support a conviction for second degree murder.

According to the prosecution's evidence, later that night, Romero sped down Interstate 5, swerving in and out of lanes at speeds of up to 100 m.p.h. while intoxicated.

Romero crashed into another vehicle, killing one of its passengers and injuring another. Following a jury trial, Romero was convicted of state charges for second degree murder, gross vehicular manslaughter, and hit and run with death or permanent serious injury.

After appealing his conviction and seeking relief in state court, Romero filed a habeas petition in this Court, contending that his conviction should be overturned based on numerous constitutional violations. The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending dismissal of Romero's habeas petition. Romero has filed objections to the R&R. For the reasons set out below, the Court: (1) **ADOPTS** the Magistrate Judge's R&R in its entirety, (2) **DENIES** the petition for writ of habeas corpus, and (3) **DENIES** a certificate of appealability.

## II.     BACKGROUND

### A.     Factual Background

This Court gives deference to state court findings of fact and presumes them to be correct; Romero may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from an unpublished California Court of Appeal opinion on direct appeal of Romero's conviction:

> On Easter day in 2010, Romero went to a party at the home of his ex-wife, Christina Gold. When Romero arrived at Gold's home between 2:00 and 3:00 p.m., he was already intoxicated. Romero had tequila and some beer while at the party. He made a comment to Gold that if he drove, someone was going to die that night. After Romero became loud and belligerent, Gold told him to "crash on the couch." Romero vomited several times.
>
> Romero's daughter, Victoria Shacreaw, left the party around 5:00 p.m. and returned two hours later. Romero was asleep while Shacreaw was gone. Around 7:30 p.m., Romero stated to Shacreaw, "If I drive right now either I'm gonna die or some innocent's gonna die." At 8:40 p.m., neighbors came to the house and said they were going to have Romero's car towed because it was in their driveway. Shacreaw asked Romero for his keys in

order to move the car, but Romero pushed her and the neighbors out of the way and took off. As Romero was running down the stairs, Shacreaw told him to give her the keys because he was too drunk to drive.

Romero's son, Nicholas, was also at the party that day. Nicholas left the party in the afternoon and returned to the home that he shared with his father. Around 9:00 p.m. that night, Nicholas heard Romero's Camaro pull into the driveway. When Nicholas went outside to Romero's car, Romero was sitting in the driver's seat talking on the phone. Romero drove away around 10:00 p.m.

Shortly before midnight, Robert Houston was driving southbound on Interstate 5 near San Onofre when he looked in his rearview mirror and saw a sports car approaching him very fast. The sports car was traveling at approximately 100 miles per hour and recklessly changing lanes. Other witnesses also observed a dark Camaro traveling at a high rate of speed and recklessly moving across lanes of traffic. The Camaro then hit the rear end of a Ford Explorer, causing the Explorer to spin and hit the guardrail. Lopez, Sr., and his son, Oscar Lopez, Jr., were thrown out of the Explorer. Lopez, Sr. died from his injuries and Lopez, Jr., who was found lying on the northbound side of the freeway, suffered a laceration on his head that required staples to repair. Two other passengers did not sustain any injuries requiring treatment.

When Officer Mark Keyes and his partner arrived at the site of the accident, they received information that the driver of the Camaro had fled the scene. The officers spotted Romero walking along a frontage road next to the freeway. Romero darted down a trail towards the beach. Border Patrol agents found Romero lying in the brush. Although agents did not mention the crash, Romero immediately stated that he was not the driver of the vehicle. He claimed the driver was a man named "Ted," who he met at Lucky John's bar in Fullerton that night. Romero told officers that he was drinking beers with Ted at the bar and later, in a nearby park.

Romero's blood was drawn at a hospital. His DNA matched DNA from blood samples taken from the driver's side airbag in the Camaro and a metal guardrail. When Romero's blood was drawn at 2:05 a.m., his blood alcohol level was .10 percent. Jorge Pena, a criminalist with the San Diego County Sheriff's Crime Laboratory, testified that based on a normal rate of elimination, Romero's blood alcohol level at the time of the crash was between .125 and .145 percent. Pena explained that because of the "Mellanby effect," a person feels the effects of alcohol more during intake than during the time the body is eliminating alcohol from the system.

*People v. Romero*, No. D060887, 2013 WL 1808701, at *1 (Cal. Ct. App. Apr. 30, 2013); Lodgment 5, ECF No. 18-7.

**B.      Procedural History**

On September 6, 2011, the San Diego District Attorney filed an amended information charging Romero with murder, gross vehicular manslaughter while intoxicated, vehicular manslaughter, driving under the influence causing injury, driving with a measureable blood alcohol causing injury, and hit and run with death or permanent serious injury. Lodgment 34, ECF No. 72-1 at 16-18. After trial, a jury found Romero guilty of second degree murder, gross vehicular manslaughter while intoxicated, driving under the influence causing injury, driving with a .08 blood alcohol level or higher causing injury, and hit and run with death or permanent serious injury. Lodgment 34, ECF No. 72-2 at 3-7. The San Diego Superior Court sentenced Romero to sixteen years to life. *Id.* at 381.

Romero appealed the judgment to the California Court of Appeal. Lodgment 3, ECF No. 18-5. Romero argued that there was insufficient evidence to sustain his murder conviction because Romero did not possess the required mental state of implied malice for such crime. *Id.* Romero also contended that his convictions for: 1) driving under the influence and causing injury; and 2) driving with a .08 blood alcohol level or higher and causing injury must be reversed because they were lesser included offenses of gross vehicular manslaughter while intoxicated. *Id.* The appellate court reversed Romero's convictions for the lesser included offenses, but affirmed the remaining convictions. Lodgment 5, ECF No. 18-7. Romero filed a petition for rehearing, which was denied, and then petitioned the California Supreme Court for review on June 4, 2013. Lodgment 8, ECF No. 18-10. The supreme court summarily denied Romero's petition. Lodgment 9, ECF No. 18-11.

On September 19, 2013, Romero filed a petition for writ of habeas corpus in the San Diego Superior Court, arguing that the information was not timely filed, his trial counsel was ineffective, the district attorney committed prosecutorial misconduct, and the

trial court abused its discretion when it denied his motion to reduce his conviction to manslaughter. Lodgment 10, ECF No. 18-12. On December 5, 2013, the trial court denied all of Romero's claims, except for his claim that counsel was ineffective for failing to investigate. Lodgment 11, ECF No. 18-13. As to the ineffective assistance claim, the court issued an order to show cause. *Id.*

On May 20, 2014, Romero filed in this Court a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Pet., ECF No. 1. On June 14, 2014, Romero moved to stay the federal proceedings while he exhausted his claims in state court. Pet'r's Mot., ECF No. 11. On August 5, 2015, the Court granted Romero a stay, noting that Romero was still litigating his ineffective assistance claim in state court. Order, ECF No. 45.

On May 1, 2015, Romero filed a habeas petition with the California Court of Appeal, raising claims of ineffective assistance and actual innocence. Lodgment 20, ECF No. 59-9. The court denied the petition, concluding that Romero did not show that he had exhausted these claims and failed to provide sufficient evidentiary support to establish a prima facie claim for ineffective assistance of counsel. Lodgment 21, ECF No. 59-10.

On October 16, 2015, the trial court denied Romero's original state habeas petition as to his ineffective assistance claim for counsel's failure to investigate. Lodgment 36, ECF No. 75-1. On June 6, 2016, Romero filed a habeas petition with the appellate court raising his failure to investigate claim. Lodgment 26, ECF No. 59-15 at 1, 3. The court of appeals denied the petition, holding that Romero had not demonstrated any prejudice from any failure to investigate. Lodgment 27, ECF No. 59-17.

On October 10, 2017, Romero filed an Amended Petition for Writ of Habeas Corpus in this Court. Am. Pet., ECF No. 65. Romero's Amended Petition raises six grounds for relief. First, Romero contends that there was insufficient evidence to support the finding that he possessed the required mental state of implied malice for second degree murder. *Id.* at 6. Romero next contends that his trial counsel provided ineffective assistance because she failed to investigate the evidence that Romero stopped at a

McDonald's and then an AM-PM convenience station prior to the collision, which according to Romero, would have demonstrated that he did not act with malice. *Id.* at 24.

In grounds three and four, Romero argued that state law and his Sixth Amendment speedy trial rights were violated when the judge presiding over his preliminary hearing did not arraign him during that hearing, but delayed the arraignment by twenty-six days, and when the district attorney did not file the complaint against him within fifteen days of the holding order. *Id.* at 39, 42. Romero claims in his fifth ground for relief that his Sixth and Fourteenth Amendment rights were violated when trial counsel failed to inform Romero of his right to testify and prohibited him from testifying at trial. *Id.* at 44. Finally, Romero alleges that he is actually innocent of the crimes of which he was convicted. *Id.* at 58.

On January 29, 2018, Respondent filed an Answer to Romero's First Amended Petition. Respondent first argued that, other than the insufficient evidence claim, Romero's claims for relief were untimely and otherwise meritless. Answer, ECF No. 71-1 at 4.

On May 30, 2018, the Magistrate Judge issued an R&R. The Magistrate Judge rejected the argument that claims two through five were time-barred and addressed all of Romero's claims on their merits. R&R, ECF No. 78 at 19. The Magistrate Judge upheld the state court's rejection of Romero's claims as reasonable in light of clearly established federal law and recommended that the petition be denied. *Id.* at 41.

On June 23, 2018, Romero filed his Objections to the R&R. Obj., ECF No. 79. Romero contends that the Magistrate Judge erred in recommending that each of his claims be denied.

## III. <u>DISCUSSION</u>

**A. Legal Standard**

### 1. Review of Magistrate Judge's Report and Recommendation

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If objections

3:14-CV-1284-GPC-BLM

are made, the Court reviews the magistrate judge's findings and recommendations de novo. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## 2. Petitions for Relief under 28 U.S.C. § 2254

A federal court may review a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *accord Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Habeas corpus is an "extraordinary remedy" available only to those "persons whom society has grievously wronged." *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)).

Federal habeas relief is available only if the result reached by the state court on the merits is "contrary to," or "an unreasonable application" of United States Supreme Court precedent, or if the adjudication is "an unreasonable determination" based on the facts and evidence. 28 U.S.C. § 2254(d)(1)–(2). A federal court may grant habeas relief if a state court either "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002).

"[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), as amended, 253 F.3d 1150 (9th Cir. 2001).

In determining whether a state court decision is contrary to clearly established federal law, the Court looks to the state court's last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where there is an unexplained decision from the state's highest court, the court "looks through" to the last reasoned state judgment and presumes that the unexplained opinion rests upon the same ground. *Id.*

Even if a federal habeas petitioner has established that a constitutional error occurred, the petitioner is not entitled to habeas relief based on a trial error unless the petitioner can establish that the error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637 (citations omitted). "Under that standard, an error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (internal quotation marks and citation omitted).

**B.    Discussion**

**1.    Romero's Claim for Insufficient Evidence of Implied Malice**

Romero first contends that there was insufficient evidence to support the element of implied malice for his second degree murder conviction. Am. Pet., ECF No. 65 at 6. In support of this claim, Romero argues that the car collision occurred approximately seven hours after his last drink of alcohol, he was within two to three hours of being under the legal blood alcohol level, he got food and coffee prior to the accident, and due to the "Mellanby effect," he miscalculated his level of sobriety. *Id.* at 8-9, 13-14.

The Fourteenth Amendment's Due Process Clause is violated and a petitioner is entitled to habeas relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). On habeas review, courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). "Although it might have been possible to draw a different

8

inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1114-15 (9th Cir. 2011).

"[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 4 (2011)). A federal habeas court presented with a record of facts that support conflicting inferences must presume that the fact-finder "resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

Second degree murder in California is the unlawful killing of a human being with malice aforethought. Cal. Penal Code §§ 187(a), 189. "Such malice may be express or implied." *Id.* § 188. Under California law, implied malice is defined as "when the circumstances attending the killing show an abandoned and malignant heart." *Id.* "The implied malice component of second degree murder may be described as a mental state encompassing these elements: knowledge that the act involves a high probability that death will result; a specific intent to do the act despite such knowledge; a base, antisocial purpose with wanton disregard for human life." *People v. Young*, 175 Cal. Rptr. 1, 5 (Cal. Ct. App. 1981).

Romero first raised this claim on direct appeal to the California Court of Appeal, which affirmed the jury's verdict for second degree murder. The court found as follows:

> Here, there was ample evidence that Romero harbored implied malice sufficient to support his second degree murder conviction. The evidence showed that Romero knew and appreciated the consequences and risks associated with driving while intoxicated. In the afternoon before the crash, Romero told Gold that someone would die if he drove that night. He made a similar comment to Shacreaw around 7:30 p.m. As late as 8:40 p.m., which was only two and a half hours before Romero alleges he started his drive from Fullerton to San Diego, Shacreaw told Romero that he was too drunk to drive.

Moreover, although Romero attempts to frame his argument to suggest that he made a conscious decision to wait until 11:15 p.m., six hours after his last drink, before driving, the evidence indicated that he was highly intoxicated, passed out or vomiting during most of that time. Further, Romero did not wait six hours before getting into a car. Despite his daughter's objections and statement that he was too drunk to drive, Romero pushed her aside and got into his vehicle around 8:40 p.m. when neighbors came to the house. Notably, Romero did not have to drive at that point. He had the option of allowing his daughter to move his car but refused her request for his car keys. According to Romero's son, Romero stopped at his house and drove again around 10:00 p.m. that night. Although Romero claims he did not drive until 11:15 p.m. and it is unclear what he did between 10:00 p.m. and the time of the crash, that does not change the result. In our view, the evidence does not indicate Romero made a purposeful decision to wait until he was sober because of the risks associated with drinking and driving. To the contrary, he was aware of the risks and made the decision to drive regardless of those risks.

We are also not convinced that evidence of the "Mellanby effect" diminishes Romero's culpability, especially where there was clear evidence that he knew the consequences of his actions and engaged in dangerous conduct. In addition to Romero's statements acknowledging the risks of drinking and driving and his decision to drive despite those risks, Romero's conduct showed a wanton disregard for life. Multiple witnesses observed Romero driving at a speed of approximately 100 miles per hour and recklessly changing lanes. These factors support a finding of implied malice. *People v. McCarnes*, 179 Cal. App. 3d 525, 535 (1986) ("*pattern* of reckless, high-speed passing maneuvers" supported finding of implied malice); *People v. Albright*, 173 Cal. App. 3d 883, 887 (1985) (defendant guilty of second degree murder where he drove at 100 miles per hour knowing that other people were on the road and must have known the high probability that he would cause death if he continued his conduct).

*Romero*, 2013 WL 1808701, at *3.

The Magistrate Judge found that ample evidence supported the jury's finding that Romero acted with implied malice, and the Court agrees.  The evidence shows that on the day of the car collision, Romero arrived at Gold's home intoxicated, then proceeded to drink tequila and beer at the party.  Romero vomited several times, and on two separate occasions, stated that someone was going to die if he drove.  Romero's daughter told him

that evening that he was too drunk to drive. Romero has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

In support of his theory that he did not act with malice, Romero maintains that he waited seven hours from his last drink to begin driving his car. Romero also contends that he only narrowly misjudged his level of sobriety, as evidenced by the fact that he would have been under the legal limit to drive had he waited only two or three more hours. However, the evidence showed that at the time of the car crash, Romero's blood alcohol level was between .125 and .145 percent.

Romero argues that he miscalculated his level of sobriety because of the Mellanby effect, which is a scientific concept that recognizes that individuals are less aware of the impact of alcohol in their system when their blood alcohol level is falling as opposed to when they first start drinking. But a criminalist did explain the Mellanby effect to the jury. It is the province of the jury to determine the credibility of witnesses and resolve evidentiary conflicts, and this Court must assume that the jury resolved all conflicts in a manner that supports the verdict. *Walters*, 45 F.3d at 1358.

Most of the arguments advanced in Romero's Objections repeats his contentions in his Amended Petition. However, Romero raises a new argument and states in his Objections that he had been on the freeway for 45 minutes before the collision and no complaints were received by the California Highway Patrol regarding his driving. Obj., ECF No. 79 at 10. However, multiple witnesses to Romero's driving immediately prior to the accident testified that Romero was driving between 90 to 100 m.p.h. Lodgment 35, ECF No. 72-5 at 454, 479, 509-10, 528-31, 552-59. Several witnesses testified that they saw Romero weaving through traffic and described his driving as unsafe and reckless. *Id.* at 454, 455, 544, 555. Such evidence supports the jury's finding that Romero acted with implied malice. To the extent that the witnesses' testimony conflicts with Romero's allegation that no complaints were received about his driving, this Court must resolve that conflict in favor of the prosecution. *Coleman*, 566 U.S. at 651.

Finally, Romero asserts in his Objections that he had no prior DUI convictions or arrest which would give him the subjective knowledge and appreciation of the risks of drunk driving. Obj., ECF No. 79 at 10. This assertion contradicts his own statements that night that if he drove, someone would die. Moreover, Romero's daughter told him that evening that he was too drunk to drive.

The Court concludes that the California Court of Appeal's opinion was not an unreasonable application of clearly established law, nor was it based on an unreasonable determination of the facts. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Romero's claim in Ground 1 for insufficient evidence of implied malice for second degree murder.

## 2. Romero's Ineffective Assistance of Counsel Claim for Trial Counsel's Failure to Investigate

Romero next contends that his trial counsel was ineffective for failing to investigate his stop at McDonald's to eat and at an AM-PM to get coffee that evening prior to the car accident. Am. Pet., ECF No. 65 at 24. Romero informed his trial counsel of these stops and also alleges that he told counsel that he talked with the AM-PM cashier for about five minutes. *Id.* at 26. Romero asserts that he told defense counsel to obtain the surveillance videos and talk to witnesses from the McDonald's and gas station. *Id.* at 27. Romero argues that a proper investigation into these facts would have revealed evidence showing that he believed he was sober enough to drive and therefore he did not possess the state of mind of implied malice. *Id.*

To prevail on a claim of ineffective assistance of trial counsel in federal court, a petitioner must first establish that trial counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. Second, he must show counsel's deficient performance prejudiced the defense. Under *Strickland*,

there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694–95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 694–95; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011). On federal habeas review, "the question is not whether counsel's actions were reasonable, [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. The court need not address the performance prong if the claim can be resolved on the ground of lack of sufficient prejudice. *Strickland*, 466 U.S. at 697.

The trial court denied this claim after holding an evidentiary hearing. Romero's trial counsel, Kathleen Cannon, testified that Romero told her he stopped at an AM-PM and a McDonald's before the collision. Lodgment 36, ECF No. 75-1 at 2. Romero identified the particular AM-PM, but could not identify the specific McDonald's location. *Id.*

Cannon had an investigator, Robert Mosemak, follow-up on the AM-PM location. *Id.* at 3. Mosemak spoke with a manager there who told Mosemak that he reviewed the surveillance video, but the video did not show either Romero or his car. Mosemak did not review the video himself, but relied on the manager's statements. The trial court concluded:

> As it relates to the investigation involving the AM-PM, the Court finds that Ms. Cannon's reliance on the investigation by Mr. Mosemak, a skilled investigator, is appropriate and not falling below the standards of a competent attorney. Mr. Mosemak provided sufficient detailed information for him, and therefore Ms. Cannon, to rely on the employee of AM-PM in their review of the surveillance footage. The Court finds that it was not necessary to view the surveillance footage themselves. Such conduct does not fall below an objective standard of reasonableness as enunciated in *Strickland*.

As it relates to the lack of any investigation into McDonald's[,] the Court finds that failure to investigate particular McDonald[s] that were nearby the Petitioner's residence does demonstrate a deficiency in performance by trial counsel. The evidentiary photograph showing a McDonald's bag in the rear seat footwell of the Petitioner's car put counsel on notice. In fact, trial counsel argued the significance of the bag during the trial. In the instant case, trial counsel made a tactical decision that relying solely on the photographic evidence of the bag gave her the ability to argue the reasonable inference therefrom. Whereas further investigation of McDonald's may have produced a witness who came into contact with the Petitioner shortly before the accident who may have been able to testify as to the Petitioner's apparent state of sobriety.

However, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Elmore v. Sinclair*, 799 F.3d 1238, 1249 (9th Cir. 2015). Based on the testimony provided at the hearing, Petitioner has failed to sustain his burden of proving that . . . to the extent [defense counsel] may have failed to investigate[,] the results of the trial would have been different.

. . . .

In the instant case, there was ample evidence that the Petitioner harbored implied malice sufficient to support his conviction for second degree murder and that the Petitioner knew and appreciated the consequences and risks associated with driving while intoxicated. The Petitioner stated, on the day and evening in question, that he was too drunk to drive and that if he did drive, that someone would die that night. Further[,] the evidence showed that Petitioner conduct showed a wanton disregard for life which was demonstrated by his driving at speeds of approximately 100 miles per hour and recklessly changing lanes. These factors clearly support a finding of implied malice. . . . Based on the above, the Petitioner did not create a substantial, not just conceivable, likelihood of a different result or that any real possibility of being acquitted was eclipsed by trial counsel's failure to investigate. *Andrews v. Davis*, 798 F.3d 759, 778 (9th Cir. 2015).

*Id.* at 4-6.

After the trial court rejected this claim, Romero filed a petition with the California

Court of Appeal, which found:

Even accepting the truth of Romero's claims and assuming his counsel's investigation was inadequate, Romero does not demonstrate any

prejudice under an objective standard of reasonable probability of an adverse effect on the outcome. *People v. Waidla*, 22 Cal. 4th 690, 718 (2000). The evidence at trial demonstrated that Romero understood both that he was too drunk to drive and the risks of driving under the influence of alcohol, yet decided to drive regardless of those risks. Based on the totality of the circumstances, including Romero's blood-alcohol content at the time of the crash and his earlier statements to his family that if he drove, someone would die, it is immaterial how Romero precisely spent his time immediately before he decided to drive recklessly and, as a result, kill another person. Even if the jury was told that Romero was buying food and coffee in the hours before the crash, there is no reasonable probability the jury would have reached a different result.

Lodgment 27, ECF No. 59-17.

The Magistrate Judge found that Romero has not established that counsel's conduct was deficient with regard to the investigation of his contact with AM-PM. R&R, ECF No. 78 at 25. Moreover, the Magistrate Judge found that even if the investigation relating to the AM-PM or McDonald's visits would have produced evidence that Romero felt sober prior to the accident, Romero's argument that he was prejudiced lacks merit. *Id.* at 27-28.

Romero contends in his Objections that an investigation into the McDonald's would have produced a witness that could have testified that Romero did not appear to be drunk and the video footage would have demonstrate the same. Obj., ECF No. 79 at 34.

The Court agrees with the Magistrate Judge that the state court's rejection of Romero's ineffective assistance of counsel claim was not contrary to, nor involved an unreasonable application of clearly established federal law. The jury heard evidence that Romero arrived at Gold's house already intoxicated that day. While at the party, Romero drank tequila and beer and stated aloud that someone would die if he drove that evening. Witnesses testified that Romero was driving fast and recklessly swerving in and out of lanes just moments before the accident. Furthermore, a criminalist testified that Romero's blood alcohol level was between .125 and .145 percent at time of the crash.

Under these facts, any deficiency by defense counsel in investigating the AM-PM or McDonald's stops did not prejudice Romero.

In arguing that he was prejudiced by counsel's failure to investigate, Romero objects to the Magistrate Judge's finding that his driving was dangerous. Obj., ECF No. 79 at 33 (citing R&R, ECF No. 78 at 26). Romero posits that no witness at trial testified that his driving was dangerous. *Id.* Perhaps the word "dangerous" was not used during witness testimony, but a witness described Romero's driving as "reckless" and thought Romero was "crazy" by the way he was driving. Lodgment 35, ECF No. 72-5 at 455. Other witnesses testified that Romero's driving "wasn't safe" and "reckless." ECF No. 72-6 at 544, 555.

Romero also objects to the Magistrate Judge's characterization of Gold's testimony as stating that Romero appeared to have already been drinking when he arrived at her home that afternoon. Obj., ECF No. 79 at 33 (citing R&R, ECF No. 78 at 26). Gold testified at trial that when Romero came over to her house that day, "I think he had a few drinks" and further testified that when Romero arrived, he acted in a manner that led Gold to believe that he was drunk. Lodgment 35, ECF No. 72-5 at 418, 420.

In view of the above, the Court **ADOPTS** the Magistrate Judge's recommendation as to this claim and **DENIES** Romero's claim for ineffective assistance of counsel based upon failure to investigate.

### 3. Romero's Speedy Trial Claim

Romero claims that state law and his Sixth Amendment right to a speedy trial were violated "when the preliminary hearing [j]udge failed to complete the hearing in one-session by failing to deem the complaint an[d] information till 26 days later without a waiver or affidavit while petitioner sat in custody." Am. Pet., ECF No. 65 at 39. Romero also brings a somewhat related claim, contending that the charging information on which he was convicted was invalid because the district attorney failed to follow state law by not filing the complaint within fifteen days after the holding order was issued. *Id.* at 42-43.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." Courts assess four factors to determine whether a defendant has been deprived of the right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The Sixth Amendment right to speedy trial is triggered by either an arrest and holding to answer or a formal indictment or information. *United States v. Marion*, 404 U.S. 307, 320 (1971). Respondent concedes that Romero was held to answer on all counts at the preliminary hearing on May 6, 2011. Answer, ECF No. 71 at 25.

The trial court rejected this claim after Romero raised this argument in his state habeas petition. Lodgment 11, ECF No. 18-13. The superior court found that Romero stipulated on the record to a continuance of his arraignment past fifteen days. *Id.* at 2. The court also noted that Romero had already been tried and his appeal heard, and it had been more than two years since the information was filed. *Id.* The court thus concluded that Romero waived this claim. *Id.* The California Court of Appeal and California Supreme Court subsequently summarily denied this claim. Lodgment 31, ECF No. 59-22; Lodgment 27, ECF No. 59-17.

Romero contends that the delay of his arraignment violated California law governing preliminary hearings and speedy trial rights. Am. Pet., ECF No. 65 at 39. The Magistrate Judge denied Romero's claims based on state law, concluding that federal habeas relief is only available for violations of federal law. R&R, ECF No. 78 at 38. The Court agrees. To the extent Romero seeks habeas relief based on violations of California state law, these claims are denied. Relief under 28 U.S.C. § 2254 may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution" or federal law. In other words, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

3:14-CV-1284-GPC-BLM

The Magistrate Judge also rejected Romero's federal constitutional claims because the delay was less than three weeks, the delay was to accommodate defense counsel's schedule, Romero agreed to the delay and did not assert his right to a speedy trial, and Romero has not established any prejudice from this delay. R&R, ECF No. 78 at 39. Romero objects to the Magistrate Judge's finding, alleging that he did not agree to continue the hearing. Obj., ECF No. 79 at 45.

A preliminary hearing was held on May 6, 2011, in which the court ordered Romero be held to answer. Ex. 14 to Am. Pet., ECF No. 65 at 233. The judge asked Romero's counsel asked if she wanted to do the arraignment right then. *Id.* Counsel responded that she was "on vacation the minute" that the hearing was over and asked to hold the arraignment either on May 31, 2011, or June 2, 2011. *Id.* The court informed Romero that he had a right, under California law, to be arraigned on May 16, 2011, and asked Romero if he is willing to waive that right to be arraigned on June 2, 2011. *Id.* at 234. Romero affirmed. *Id.*

The state court's determination that Romero waived his speedy trial claim was not contrary to, or an unreasonable application of, clearly established federal law. None of the *Barker* factors weigh in Romero's favor. With regard to length of delay, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530. Here, Romero's arraignment was held twenty-seven days after his preliminary hearing. The reason for the delay was defense counsel's vacation schedule. Romero agreed to the delay. Romero did not assert his right to a speedy trial until he raised this claim in his state habeas petition on September 19, 2013. Lodgment 10, ECF No. 18-12 at 3. Lastly, Romero has not proffered any evidence of prejudice caused by this delay. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation as to these claims and **DENIES** Grounds 3 and 4 of Romero's Amended Petition.

**4.    Romero's Claim That He Was Prohibited From Testifying at Trial**

Romero claims that his Sixth and Fourteenth Amendment rights were violated when his trial counsel failed to inform him of his right to testify and prohibited him from testifying at trial.  Am. Pet., ECF No. 65 at 44.  Romero alleges that towards the end of trial, he was expecting to take the stand, but defense counsel told the court that the defense rests.  *Id.* at 49.  Romero states that he repeatedly asked counsel when is he going to testify and why he cannot testify, but his attorney responded that he will not testify because of his prior DUI conviction.  *Id.* at 49-50.  Romero asserts that were it not for counsel telling him he could not testify, he would have taken the stand.  *Id.*

"The right of an accused to testify in his own defense is well established, and is a constitutional right of fundamental dimension."  *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999) (citation and quotation marks omitted).  "The right stems from several provisions of the Constitution, including the Fourteenth Amendment's Due Process Clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's privilege against self-incrimination."  *Id.*  This right "may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional."  *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).  However, the waiver of the right to testify "need not be explicit."  *Pino-Noriega*, 189 F.3d at 1094.  "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so."  *Joelson*, 7 F.3d at 177.  "A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court, or discharging his lawyer."  *Pino-Noriega*, 189 F.3d at 1095 (citation and quotation marks omitted).  "When a defendant remains silent in the face of his attorney's decision not to call him as a witness, he waives the right to testify."  *Id.* (citation and quotation marks omitted).

The California Court of Appeal concluded that Romero failed to establish facts supporting a claim of ineffective assistance of counsel regarding the decision to have Romero not testify.  Lodgment 21, ECF No. 59-10.  The Magistrate Judge found that

Romero waived his right to testify, as he presented no evidence from the trial proceedings that support his claim that he wanted to testify, that his lawyer prevented him from testifying, or that he notified the court of his desire to testify. R&R, ECF No. 78 at 32-33. Moreover, the Magistrate Judge noted that there is no indication in the record that Romero protested or sought permission to testify when defense counsel informed the court that the defense rests. *Id.*

The Court agrees with the Magistrate Judge's finding that Romero waived his right to testify. Nothing in the record shows that Romero spoke to the court or discharged his lawyer in light of defense counsel's failure to call Romero to testify. Rather, the record reflects that Romero remained silent in the face of his attorney's decision not to call him as a witness. Romero contends in his Objections that the record does not demonstrate an affirmative waiver. Obj., ECF No. 79 at 38. However, waiver of the right to testify "need not be explicit." *Pino-Noriega*, 189 F.3d at 1094.

Romero's claim that he received ineffective assistance because counsel failed to inform him of his right to testify does not alter the Court's analysis. Romero argues in his Objections that he did not know he had a right to testify and both the court and his counsel failed to advise him of that right. Obj., ECF No. 79 at 38-39. In *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993), Nohara argued that "he was denied his Sixth Amendment right to effective assistance of counsel because his lawyer waived his right to testify at trial and neither his lawyer nor the court informed him of his right to testify." The Ninth Circuit rejected this claim, maintaining that when a defendant is silent in the face of his attorney's decision not to call him as a witness, the defendant has waived his right to testify. *Id.* at 1244 (citing *Edwards*, 897 F.2d at 447).

The Magistrate Judge also found that Romero failed to show that he suffered prejudice as a result of defense counsel's tactical decision to not call Romero to testify. R&R, ECF No. 78 at 33. Much of Romero's proffered testimony was already presented to the jury during trial. Even if Romero had testified regarding his stops at McDonald's and AM-PM, as discussed above, Romero has not shown that he was prejudiced from the

absence of this evidence being presented to the jury. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Grounds 5 of Romero's Amended Petition.

### 5. Romero's Claim That He Is Actually Innocent

As his last ground for relief, Romero contends that he is actually innocent of his convictions. Am. Pet., ECF No. 65 at 58. Romero contends that his claim for actual innocence is supported by the evidence that he stopped at McDonald's and AM-PM just prior to the accident. Romero further argues that had he testified at trial, he would have testified to what his state of mind was at the time of the collision. *Id.* at 60-61.

Romero raised this claim in state court petitions, and each time the claim was denied summarily or on procedural grounds. Lodgment 27, ECF No. 59-17; Lodgment 31, ECF No. 59-22. The Magistrate Judge denied this claim on grounds that the Supreme Court has never held that a free-standing actual innocence claim exists, Romero has failed to provide new reliable evidence, and ample evidence supports the jury's verdict. R&R, ECF No. 78 at 40-41. Romero maintains in his Objections he is factually innocent of second degree murder because he did not possess the requisite mental state. Obj., ECF No. 79 at 47. .

While the Supreme Court has not recognized a freestanding claim of actual innocence as grounds for habeas relief, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare." *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

To the extent Romero raises a free-standing actual innocence claim, the Court agrees with the Magistrate Judge that the denial of this claim cannot be contrary to, or an

3:14-CV-1284-GPC-BLM

unreasonable application of, clearly established federal law because the Supreme Court has not recognized such claim. Even construing Romero's actual innocence claim as a gateway to pass through a procedural bar to any of his other claims, none of his other claims have been dismissed on procedural grounds; rather, they have been dismissed on their merits. Finally, looking to the merits of Romero's actual innocence claim, Romero has failed to meet his high burden. As discussed above, Romero's proffered evidence of his stop to McDonald's and AM-PM and his own testimony is not sufficient to show that no reasonable juror would have found Romero guilty. The Court finds that Romero's claim for actual innocence does not provide a basis for federal habeas relief. The Court **ADOPTS** the Magistrate Judge's recommendation that relief be denied as to Romero's actual innocence claim and **DENIES** this claim.

### 6. Certificate of Appealability

Rule 11 of the Federal Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Romero has not stated a valid claim of the denial of a constitutional right, and that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. *See id.* Accordingly, the Court **DENIES** a certificate of appealability.

///

///

///

# IV.   CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **OVERRULES** Petitioner's Objections, **DENIES** Petitioner's Petition, and **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  September 13, 2018

Hon. Gonzalo P. Curiel
United States District Judge

3:14-CV-1284-GPC-BLM